## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REAGAN BLAZEVICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:19-cv-198 |
| | ) | Judge Stephanie L. Haines |
| STAR HOTELS, INC., *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Reagan Blazevich ("Plaintiff") filed a 20-count complaint asserting claims for sexual harassment and sexual discrimination under Title VII of the Civil Rights Act and under the Pennsylvania Human Relations Act ("PHRA"), along with 18 state common law causes of action (ECF No. 1). All causes of action arise from Plaintiff's allegations that she was sexually harassed and assaulted by Defendant Gary Shilling while working for Defendant Star Hotels, Inc. d/b/a Hampton Inn, Clearfield, PA and d/b/a Comfort Inn, Clearfield, PA ("Star Hotels"), with her allegations against management employees Defendants Andy Modi and Kim Hemphill arising from their conduct to Plaintiff after learning of the allegations involving Defendant Shilling.

Plaintiff alleges the following counts: (1) sexual harassment and discrimination under federal law against Defendant Star Hotels; (2) sexual harassment and discrimination under Pennsylvania state law against Defendant Star Hotels; (3) breach of duty of care to business invitee against Defendant Star Hotels; (4) wrongful supervision and retention of Defendant Shilling against Defendant Star Hotels; (5) wrongful supervision and retention of Defendant Modi against Defendant Star Hotels; (6) wrongful supervision and retention of Defendant Hemphill against Defendant Star Hotels; (7) negligent supervision and retention of Defendant Shilling against

1

Defendant Star Hotels; (8) negligent supervision and retention of Defendant Modi against Defendant Star Hotels; (9) negligent supervision and retention of Defendant Hemphill against Defendant Star Hotels; (10) negligent hiring of Defendant Shilling against Defendant Star Hotels; (11) intentional infliction of emotional distress ("IIED") against all Defendants; (12) negligent infliction of emotional distress ("NIED") against all Defendants; (13) fraudulent misrepresentation against Defendants Star Hotels and Modi; (14) negligent misrepresentation against Defendants Star Hotels and Modi; (15) false imprisonment against Defendants Star Hotels and Shilling; (16) false imprisonment against Defendants Star Hotels and Modi; (17) assault against Defendants Star Hotels and Shilling; (18) assault against Defendants Star Hotels and Modi; (19) battery against Defendants Star Hotels and Shilling; and (20) breach of contract against Defendant Star Hotels.

Defendants have filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) (ECF No. 28). Defendants move to dismiss Defendant Modi under Rule 12(b)(5) for insufficient service[1] and move to dismiss all claims in the complaint under Rule 12(b)(6) for failure to state a claim. Plaintiff has filed a response thereto contending that she has validly pleaded her claims in the complaint (ECF No. 31).[2]

Defendants' motion to dismiss Defendant Modi under Rule 12(b)(5) will be denied as set forth herein. As to Defendants' motion to dismiss under Rule 12(b)(6), the Court holds that

---

[1] While stating that the pending motion to dismiss challenges the sufficiency of the claims against Defendants Star Hotels, Inc., Gary Shilling, and Kim Hemphill only, Defendants have repeatedly referred to the actions and claims alleged against Defendant Modi in their motion to dismiss in order to address the claims against Defendant Star Hotels relating to Defendant Modi's actions. Accordingly, the Court has addressed these arguments through its determination of the claims of Defendant Star Hotels, as the complaint's claims against Defendant Modi are based solely on allegations that he was acting in the scope of his employment.

[2] Plaintiff has also filed a Brief in Support of her Response in Opposition at ECF No. 33, however, as this document is largely identical to the Response in Opposition, the Court will cite to the Response in Opposition (ECF No. 31) only.

Plaintiff has failed to state a claim with regard to the following claims: 3, 4, 5, 6, 8, 9, 13, 14, 16, 18, 20, and Counts 11 and 12 as to Defendants Modi and Hemphill. The Court will allow the remaining causes of action to proceed to discovery. Thus, for the reasons detailed below, Defendants' motion to dismiss (ECF No. 28) is GRANTED IN PART and DENIED IN PART.

## I. Factual and Procedural Background

The following facts are accepted as true for the purpose of the pending motion to dismiss (ECF No. 28):

Defendant Star Hotels owns and operates both the Hampton Inn and Comfort Inn located on adjacent properties in Clearfield, Pennsylvania (ECF 1 at ¶ 4). Plaintiff alleges she began working for Star Hotels, in September of 2018 on the house keeping staff. *Id*. at ¶ 20. During Plaintiff's employment, Defendant Gary Shilling was employed as maintenance personnel for Defendant Star Hotels, and Defendants Kim Hemphill and Andy Modi were employed as managers at Defendant Star Hotels. *Id*. at ¶ 6, 7 and 23. On numerous occasions Defendant Shilling would position his person in the hallway entrance to the hotel rooms that Plaintiff was cleaning, resulting in Plaintiff being physically trapped, and ask her if she wanted his assistance. *Id*. at ¶ 24. Plaintiff describes a specific incident when Defendant Shilling used Plaintiff's housekeeping service cart to block Plaintiff from escaping and then "touched, groped and assaulted" Plaintiff without her consent, making sexual advances and grasping her body while physically preventing her from escaping Defendant Shilling's grasp. *Id*. at ¶ 25.

On January 3, 2019, Plaintiff informed Defendants Star Hotels and Modi during an employee meeting that Defendant Shilling had sexually harassed her, and Defendant Modi stated that he would not permit sexually harassing conduct at the Comfort Inn. *Id*. at ¶ 26. Plaintiff alleges that Defendant Hemphill was also made aware that Plaintiff had communicated at the

employee meeting that Defendant Shilling had been sexually assaulting Plaintiff, but that Defendant Hemphill took no direct action to address the situation. *Id.* at ¶ 27.

On January 11, 2019, Plaintiff was working at the Comfort Inn when Defendant Modi informed her that Defendant Shilling would be coming from the Hampton Inn to the Comfort Inn to fix an inoperable room door lock. *Id.* at ¶ 29. Defendant Modi, in his role as Defendant Star Hotels' management, told Plaintiff to hide in a laundry room so she would be out of view of Defendant Shilling while he was at the property to fix the lock. *Id.* at ¶ 31. Plaintiff protested but followed these instructions. *Id.* Plaintiff requested that the door from the hallway into the laundry room remain open. *Id.* at ¶ 32. However, Defendant Modi closed the door, resulting in Plaintiff becoming confined in the laundry room as housekeeping staff had positioned their housekeeping service carts in front of the alternate exit. *Id.* at ¶ 33-34. Plaintiff was confined in the laundry room for two hours while Defendant Shilling was at the Comfort Inn. *Id.* at ¶ 35. After being released, Plaintiff left the premises and informed Defendant Star Hotels of her constructive discharge because of the actions of Defendants Shilling, Modi, and Hemphill. *Id.* at ¶ 36. Relating to her negligent supervision and hiring claims as to Defendant Shilling, Plaintiff alleges that Defendant Shilling was convicted and confined to jail for harassment and other offenses in December of 2012. *Id.* at ¶ 37. Plaintiff states that as a result of the incidents described in the complaint, she continues to suffer from Major Depressive Disorder, Anxiety and Insomnia as a result of Defendants' actions. *Id.* at ¶ 38.

Plaintiff describes that she filed an action with the EEOC against Defendants under Title VII of the Civil Rights Act of 1964, and on October 9, 2019, was issued a Notice of Right to Sue. *Id.* at ¶¶ 17-19. The parties in this matter are Pennsylvania residents and federal question jurisdiction is premised upon the Title VII claims, under 28 U.S.C. §1331. Supplemental

jurisdiction is asserted over the state law claims, 28 U.S.C. §1367.

## II.  Standard of Review

When a plaintiff fails to comply with the procedural requirements of Rule 4, a party may move to dismiss a complaint for "insufficient service of process" under Rule 12(b)(5).  Upon asserting a Rule 12(b)(5) challenge, "the party asserting the validity of service bears the burden of proof on that issue." *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 452 (M.D. Pa. 2007) (quoting *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir.1993)).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id.* at 664.  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.*  To avoid dismissal, plaintiffs "must allege facts to 'nudge [their] claims across the line from conceivable to plausible.'" *Mann v. Brenner,* 375 F. App'x 232, 235 (3d Cir. 2010) (quoting *Bell Atl. v. Twombly,* 550 U.S. at 570).

## III.  Legal Analysis

### 1.  Defendants' motion to dismiss under Rule 12(b)(5) as to Defendant Modi is denied.

Defendants seek the dismissal of Defendant Modi under Rule 12(b)(5) based on Plaintiff's

failure to make service on Defendant Modi within the time period provided under Rule 4(m). On January 20, 2020, Plaintiff filed a motion for substituted service with this Court relating to service of Defendant Star Hotels (ECF No. 20). In response to that motion, Attorney McGrath, Defendants' former counsel, indicated she was authorized to accept service for Defendants Star Hotels, Shilling and Hemphill, but apparently not Defendant Modi (ECF No. 24 at ¶8). The Court notes that, while there has been a substitution of defense counsel in this matter, all defense counsel entered an appearance on behalf of Defendant Modi as well as the other Defendants (ECF Nos. 25 and 34-35). Plaintiff's counsel states that he employed a process server to determine Defendant Modi's address, has requested Defendant Modi's address from defense counsel, hired a private investigator to determine Defendant Modi's address, and sent a waiver of service to that address (ECF No. 31 at ¶¶ 76-78, 81). On February 28, 2020 Plaintiff also provided Attorney McGrath, Defendant Modi's counsel at the time, with a waiver of service for Defendant Modi (ECF No. 31-2). However, Defendants state in their motion to dismiss that service has not been made on Defendant Modi, and Plaintiff does not contest that service has not been effected as to Defendant Modi within the time period provided under Rule 4(m).

Given the expiration of the time period, the Court must determine whether good cause exists for an extension of time to make service on Defendant Modi. District courts conduct a two-part analysis when determining whether to extend the time for service of a summons and complaint. *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997). First, the district court must determine "whether good cause exists for a plaintiff's failure to effect timely service." *Id.* If good cause does not exist, the district court must then "consider whether to grant a discretionary extension of time." *Id.*

A showing of good cause "requires a demonstration of good faith on the part of the party

seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining good cause, courts have considered such factors as "(1) reasonableness of plaintiff's efforts to serve, (2) prejudice to the defendant by lack of timely service, and (3) whether plaintiff moved for an enlargement of time to serve." *Id.* Inadvertence and lack of diligent counsel are insufficient to establish good cause for an extension of time to serve process. *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987). Indeed, the "primary focus" of the good cause inquiry "is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*

Further, in exercising its discretion, a Court should consider whether "there exists a reasonable prospect that service may yet be obtained." *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 457 (M.D. Pa. 2007). Courts are generally "reluctant to dismiss an action where there is a possibility of proper service because dismissal 'needlessly burdens the parties with additional expense and delay and postpones the adjudication of the controversy on its merits.'" *Copia Communs., LLC v. AMResorts, L.P.*, No. CV 16-5575, 2017 WL 2656184, at *6 (E.D. Pa. June 20, 2017) (citations omitted).

Given Plaintiff's previous attempts to serve Defendant Modi, and finding that Defendant Modi's representation by defense counsel in this matter indicates a reasonable prospect that service may yet be obtained, the Court will DENY Defendants' motion to dismiss under Rule 12(b)(5) and order Plaintiff to effectuate service to Defendant Modi within sixty (60) days from the date of this order.

**2. Plaintiff has sufficiently pleaded Counts 1 and 2.**

In Count 1, Plaintiff alleges sexual harassment and sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* In Count 2, Plaintiff alleges

sexual harassment and sexual discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955 *et seq.*  The PHRA is interpreted in accord with Title VII.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995); *Chmill v. City of Pittsburgh*, 412 A.2d 860, 871 (Pa. 1980).  For this reason, the Court evaluates Counts 1 and 2 together.

Plaintiff has alleged that Defendants' actions were discriminatory sexual harassment giving rise to a hostile work environment that led to her constructive discharge in violation of Title VII and the PHRA (ECF No. 1 at ¶¶47-48, 62-63). Sexual harassment, to violate Title VII, must be "severe or pervasive" enough to "alter the conditions of [the victim's] employment and create an abusive working environment…" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted).  The work environment must be "objectively and subjectively offensive…[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 787-788 (citation omitted). To show that there was a hostile work environment under Title VII and the PHRA, a plaintiff must establish that "(1) the employee suffered intentional discrimination because of his/her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted).

Plaintiff alleges multiple instances of Defendant Shilling's sexual harassment, one instance of assault by Defendant Shilling, that she informed her managers of the harassment and assault but they took no action, and that she was confined by Defendant Modi for a period of two hours after she informed her managers of Defendant Shilling's assault and harassment (ECF No. 1 at ¶24-35).

Defendants contend that these alleged actions, even if accepted as true, do not rise to the "severe" and "pervasive" standard.  Defendants cite to a number of cases in support of their position: *Carattini v. Woods Servs.,* 2010 WL 447453 (E.D. Pa. Feb. 4, 2010) (granting summary judgment in favor of employer upon finding that a single incident of a co-worker grabbing her vagina and breasts was insufficient to create a hostile work environment); *Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 439-40 (E.D. Pa. 2001) (granting summary judgment in favor of employer on hostile work environment claim when plaintiff asserted her supervisor assaulted her, made suggestive comments, and propositioned her on multiple occasions); *Swanson v. Nw. Human Servs., Inc.*, No. 05-3054, 2006 WL 3354145 (E.D. Pa. Nov. 30, 2006) (granting summary judgment in favor of employer upon finding no hostile work environment created where defendant told plaintiff he looked good in his jeans once, grabbed his buttocks and asked him on dates over a two month period); *McGraw v. Wyeth-Ayerst Lab.*, No. 96-5780, 1997 WL 799437 (E.D. Pa. Dec. 30, 1997) (granting summary judgment in favor of employer upon finding supervisor's repeated requests for a date, kissing plaintiff without her consent, "forcing his tongue into her mouth" on one occasion, and touching plaintiff's face not severe enough to create hostile work environment); *Bauder v. Wackenhut Corp.*, No. 99-1232, 2000 WL 340191 (E.D. Pa. Mar. 23, 2000) (granting summary judgment in favor of employer upon finding allegations that supervisor grabbed plaintiff's buttocks and male co-workers discussed the location of plaintiff's tattoos were insufficient to establish a hostile work environment); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463-65 (6th Cir. 2000) (affirming grant of summary judgment in favor of employer upon finding that supervisor's rubbing employee's shoulders, grabbing buttocks, and offensive comments not pervasive or severe); *Valenti v. Triangle Circuits of Pittsburgh, Inc.*, 419 F. Supp. 2d 701 (W.D. Pa. 2005) (granting summary judgment in favor of employer on determining single

incident where vice president showed employee a picture of a naked woman on a motorcycle was not sufficiently severe or pervasive to alter the conditions of employee's employment, and thus did not create hostile work environment under Title VII); *Winkler v. Progressive Bus. Publ'ns*, 200 F. Supp. 3d 514, 519 (E.D. Pa. 2016) (dismissing sex discrimination claims under Title VII where employee alleged that another employee had been making sexually charged remarks for nine months and assaulted plaintiff while making another offensive comment).

With the exception of *Winkler*, the cases cited by Defendants were all decided at the summary judgment stage following discovery.  In *Winkler*, the district court granted the employer defendant's motion as to sex discrimination claims under Title VII, but notably denied the motion to dismiss as to plaintiff's hostile work environment claims upon finding that plaintiff sufficiently alleged a hostile work environment.  In this case, the Court cannot measure whether or not Defendants' actions are more "severe" or "pervasive" than those actions in the cases relied upon by Defendants without the benefit of additional fact-finding to develop the record.  Accordingly, the Court finds that Plaintiff has plausibly pleaded claims under Counts 1 and 2 and Defendants' motion to dismiss these counts is DENIED.

Specifically as to Count 2, Defendants contend that Count 2 is barred for Plaintiff's failure to exhaust her administrative remedy or wait for a year pending the Pennsylvania Human Relations Committee's ("PHRC") review of her claims.  The parties correctly state that the Third Circuit has explained that the "PHRA... requires that claims be brought first to an administrative agency, the PHRC, which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter."  *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 920 (Pa. 1989).

In this case, the complaint does not expressly state that Plaintiff pursued an action with the PHRC or cross-filed her EEOC charge. Plaintiff states only that her claims are not barred as she has exhausted her administrative remedy (ECF No. 31 at ¶¶51, 56). The Court does not have sufficient information to determine if Plaintiff has in fact failed to pursue her claims with the PHRC or if she has simply inadvertently omitted stating confirmation of her filing. Defendants' motion to dismiss based on failure to exhaust administrative remedies as to Count 2 is therefore DENIED without prejudice. This ruling shall not prohibit Defendants from raising this issue to the Court to the extent the record shows Plaintiff failed to exhaust her administrative remedies under the PHRA.

The Court additionally notes that Plaintiff has conceded that punitive damages are not available under the PHRA (ECF No. 31 at ¶57).

### 3. Plaintiff's "wrongful supervision" claims at Counts 4, 5, and 6 are not cognizable claims under Pennsylvania law.

Counts 4, 5, and 6 allege wrongful supervision and retention against Defendants Shilling, Modi, and Hemphill in violation of Pennsylvania common law. Such a cause of action does not exist under Pennsylvania common law. *See Korinko v. Come Ready Nutrition, LLC*, No. CV 2:20-226, 2020 WL 4926177, at *11 (W.D. Pa. August 21, 2020) (quoting *Booker v. AMTRAK*, 880 F. Supp. 2d 575, 586 (E.D. Pa. 2012), "there is no cause of action for 'wrongful supervision' under Pennsylvania law."). Indeed, the case law cited by Plaintiff to support these claims addresses only negligent supervision and retention. Because there is no cause of action under Pennsylvania law for wrongful supervision and retention, Defendants' motion to dismiss Counts 4, 5, and 6 for failure to state a claim is GRANTED.

### 4. As currently pleaded, Plaintiff's tort claims at Counts 3, 8, 9, 13, 14, 16, and 18 are barred by the exclusivity provision of the Pennsylvania Worker's Compensation Act.

Defendants have moved to dismiss Counts 3 through 19 based on the exclusivity provisions

of Pennsylvania's Workers' Compensation Act ("PWCA"). Pennsylvania courts have made clear that this Act "provides the exclusive remedy for all employees' work-related injuries." *McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F. Supp. 2d 393, 400 (E.D. Pa. 2002) (citing 77 Pa. Cons. Stat. Ann. § 481(a)). However, the statute recognizes a limited exception, known as the "personal animus" or "third party attack" exception, which permits claims for "'employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment.'" *Id.* (quoting *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 160 (3d Cir. 1999); *see also* 77 Pa. Cons. Stat. Ann. § 481(a).

For the purposes of a motion to dismiss, in order to plead a valid cause of action which would fall within the personal animus exception, "[t]he 'critical inquiry in determining the applicability of the third party attack exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship.'" *McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F. Supp. 2d at 400 (E.D. Pa. 2002) (quoting *Fugarino v. Univ. Servs.,* 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000).

In discussing the personal animus exception in a sexual harassment context, the United States Court of Appeals for the Third Circuit noted that cases addressing this issue have gone both ways, some courts permitting claims to go forward, while other courts under similar circumstances find the claims to be preempted by the PWCA. *See Durham Life Ins. Co. v. Evans,* 166 F.3d at 160 (3d Cir. 1999) (citing cases). In a footnote, the Third Circuit further elaborated on this issue as follows:

> Sexual harassment is a well-recognized workplace problem, the kind of thing employers must be prepared to combat. Because it is like other workplace hazards, we suspect that Pennsylvania would find [intentional infliction of emotional distress] claims based on this kind of harassment to be preempted. But we cannot be sure, and

we express no opinion as to whether an [intentional infliction of emotional distress] claim for harassment more disconnected from the work situation would be preempted, for example where a supervisor sexually assaulted an employee or stalked her outside of work.

*Durham,* 166 F.3d at 160 n.16.

The *Durham* court did not rule on this issue but stated further that it understood "Pennsylvania law to extend workers' compensation preemption to personal animosity that develops from work-related events" and that sexual harassment is an "understood problem in the workplace." *Id.*

Plaintiff admits in her response that the alleged "unwanted assistance", "unlawful detention", "physically preventing escape", "sexual advances", and "unlawful touching" all occurred during the course and scope of her employment on the premises of the hotel (ECF No. 31 at ¶19). However, Plaintiff contends that the sexual harassment, attacks on Plaintiff's person, and the false imprisonment of Plaintiff were entirely personal in nature and meet the "personal animus" or "third party attack" exception to the exclusivity provision of the PWCA (ECF No. 31 at ¶11).

Defendants cite to several cases in support of their position, but the case *Hancuff v. Prism Techs. & Assemblies, LLC,* 357 F. Supp. 2d 828 (W.D. Pa. 2005) appears to be the most factually and procedurally comparable. In that case, three female employees brought claims including battery and IIED against their employer based on sexual assaults by another employee, Joseph Difucci, who then allegedly subjected them to harassing acts of exposing them to toxic fumes when his advances were rejected. *Id.* In ruling on a motion to dismiss, the court held that Difucci's conduct appeared to be motivated by sexual bias, not a personal animosity, and therefore, the female employees' claims against their employer were preempted by the PWCA. *Id.* at 834. However, one distinguishing fact in that case is that the conduct was directed to three female

13

employees, making the conduct more readily delineated as being motivated by sexual bias rather than personal animus. *See also, Mikula v. W. Shore Window & Door, Inc.*, No. CV 18- 1341, 2019 U.S. Dist. LEXIS 187199, at \*28-29 (W.D. Pa. Oct. 29, 2019) (finding that the PWCA barred IIED claims at summary judgment as the sex discrimination in that case was not alleged to have been motivated by some personal animus directed at plaintiff personally, rather, it was related to alleged bias against all men employed by defendant).

The Court must also consider how this issue has been treated in Pennsylvania state courts. In *Gares v. Willingboro Township*, 90 F.3d 720, (3d Cir. 1996), the Third Circuit stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule.

*Id.* at 725.

In predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise. *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991). Pennsylvania intermediate appellate courts have made a distinction in applying the PWCA to certain cases of sexual harassment in the workplace. *See Hoy v. Angelone,* 691 A.2d 476, 482 (Pa. Super. Ct. 1997) (finding that plaintiff's sexual harassment claim was not preempted by the PWCA because the harassment perpetrated by the defendant was personal in nature and not directed at the plaintiff due to her employment), *aff'd on other grounds,* 720 A.2d 745 (Pa. 1998); *Schweitzer v. Rockwell Int'l,* 586 A.2d 383, 391 (Pa. Super. Ct. 1990) (finding that harassment was personal and not part of the legitimate employer/employee relationship); *compare with, Winterberg v. Transportation Ins. Co.,* 72 F.3d 318, 322 (3d Cir. 1995) (finding that egregious misbehavior in handling a worker's compensation

claim was preempted by the PWCA because Pennsylvania law has a broad intent to preempt common law torts "in matters arguably connected with work-related injuries."); *Fleming v. Kramont Employer Royce Realty, Inc.,* No. 02-2703, 2002 U.S. Dist. LEXIS 15806, at *15-16 (E.D. Pa. Aug. 16, 2002) (personal animus exception does not apply where alleged discrimination included deprivation of necessary information, exclusion from essential meetings, public criticism, and differential treatment).

In interpreting Pennsylvania state law on this issue, other district courts have also noted this distinction. *See West v. Dan Lepore & Sons Co.,* No. 17-1592, 2019 U.S. Dist. LEXIS 41702, (E.D. Pa. Mar. 14, 2019) (denying employer's summary judgment motion upon finding that sexual harassment of plaintiff was not work-related and a jury could reasonably conclude the PWCA personal animus exception applies); *Clemons v. Wash. Trotting Ass'n, LLC*, 2019 WL 1359238 (W.D. Pa. March 26, 2019) (denying employer's motion to dismiss claim under Pennsylvania's Dram Shop Act based on exclusivity of the PWCA when plaintiff employee was sexually assaulted by third party while working as a security guard).

Though referred to collectively by Plaintiff and Defendants, the complaint alleges two distinct set of facts for the purposes of the within analysis: the first relating to Defendant Shilling's actions of sexual harassment and assault of Plaintiff and the second relating to the actions against Plaintiff by her managers after they became aware of the Defendant Shilling's conduct.   The complaint clearly describes that Defendant Shilling sexually harassed and assaulted Plaintiff. There is no record before the Court to allow it to determine the motivation behind Defendant Shilling's actions. *See Williams v. U.S. Airways, Inc.,* No. 06-4797, 2007 U.S. Dist. LEXIS 65799, at *6-7 n.2 (E.D. Pa. Sept. 5, 2007) ("the question of the alleged harasser's intent is inherently fact intensive").   Accordingly, the determination of whether Plaintiff's tort claims relating to

Defendant Shilling and his conduct are preempted by the PWCA cannot be determined at this stage of the case.

The Court finds that, as currently pleaded, the allegations in the tort claims stemming from the actions of Defendants Modi and Hemphill do not fit within the personal animosity exception. While the allegations describe inaction on Defendant Hemphill's part and behavior by Defendant Modi that resulted in Plaintiff's alleged confinement and assault, the complaint states that they were acting in their role as employees of Defendant Star Hotels. *See Fugarino v. University Servs.*, 123 F. Supp. 2d at 844 (E.D. Pa. 2000) ("[t]o apply the personal animus exception, a party must show that the harassment was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship."). Accordingly, the Court will GRANT Defendants' motion to dismiss as to Counts 3, 8, 9, 13, 14, 16, and 18, as well as Counts 11 and 12 as to Defendants Modi and Hemphill, because, as currently pleaded, they are barred by the exclusivity provision of the PWCA. These claims will be dismissed without prejudice to Plaintiff to re-plead in the event she can in good faith present cognizable claims.[3]

### 5. Preemption under the PHRA.

Defendants also assert that all of Plaintiff's common law claims should be dismissed because the PHRA provides the sole and exclusive remedy for the Defendants' alleged conduct in those claims. The PHRA is, in fact, the exclusive remedy for offenses listed in section five of the statute. 43 P.S. § 962(b) ("the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same

---

[3] Leave to amend will not be granted as to Plaintiff's claim at Count 3 for breach of duty of care to business invitee. Plaintiff has failed to cite to any authority that would refute Defendants' contention that the facts in this Title VII sexual discrimination case do not support such a claim.

grievance of the complainant concerned"). The fact that an employer discriminated cannot be used as support for a separate tort claim and "must be adjudicated within [the PHRA's] framework." *Keck v. Commercial Union Ins. Co.*, 758 F. Supp. 1034, 1039 (M.D. Pa. 1991). However, "if all or part of the facts that would give rise to a discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA and need not be adjudicated within its framework." *Id.*

Plaintiff's remaining claims relating to Defendant Shilling's conduct for negligent supervision (Count 7) and hiring (Count 10) appear to involve allegations concerning Defendant Shilling's prior conviction for harassment and the extent of Defendant Star Hotels' awareness of the same—i.e. circumstances outside of her claims at Counts 1 and 2. Additionally, Plaintiff's remaining claims of IIED claims against Defendants Shilling and Star Hotels (Count 11), NIED claims against Defendants Shilling and Star Hotels (Count 12), false imprisonment against Defendants Shilling and Star Hotels (Count 15), assault against Defendant Shilling and Star Hotels (Count 17), and battery against Defendants Shilling and Star Hotels (Count 19) are not preempted by the PHRA. Rather, the causes of action protect "fundamentally different" interests from the interest Plaintiff seeks to protect under her PHRA claim. *See Korinko v. Come Ready Nutrition, LLC*, No. CV 2:20-226, 2020 U.S. Dist. LEXIS 151836, at *10-11 (W.D. Pa. Aug. 21, 2020) (noting further that such offenses are not listed in section five of the PHRA and are thus not covered by the statute's exclusivity provision.)

## 6. Plaintiff has sufficiently pleaded claims for negligent supervision and hiring of Defendant Shilling at Counts 7 and 10.

To recover for negligent supervision, a plaintiff must prove that her loss resulted from "(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the

employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Investment Partners, Inc.*, 708 F.3d 470, 488 (3d. Cir. 2013) (citations omitted). To prevail on a claim for negligent supervision, it must be demonstrated that the employer knew or should have known of the need to control the employee. *Id.* at 491. "An employer knows, or should know, of the need to control an employee if the employer knows that the employee has dangerous propensities that might cause harm to a third party." *Id.*

Plaintiff's negligent supervision and hiring claims cite to Defendant Shilling's alleged prior conviction of harassment (ECF No. 1 at ¶92). While Defendants correctly state that Plaintiff does not allege how Defendant Star Hotels would have known about such harassment charges, or that such prior harassment occurred on the premises of Defendant Star Hotels, the Court requires additional facts before it can conclude that the actions described in the complaint were unforeseeable.

### 7. Plaintiff has sufficiently pleaded her IIED and NIED claims relating to Defendants Shilling and Star Hotels at Counts 11 and 12.

Under Pennsylvania law, the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 2008 PA Super 268, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008).

"The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an 'extreme or outrageous type.'" *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (citations omitted). The *Cox* Court described: "it has been said that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. [...] Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.* at 395 (citations omitted).

The IIED and NIED claims against Defendants Modi and Hemphill have already been dismissed from this matter pursuant to the exclusivity of the PWCA.  While the applicable case law creates a heavy burden for a plaintiff to prove either of these emotional distress claims against Defendants Shilling and Star Hotels, Plaintiff has alleged that she was subjected to conduct by Defendant Shilling that may form the basis of such claims, and Plaintiff should be permitted to proceed with these claims at this stage of the proceedings. *See Hayes v. Waddell & Reed*, No. CV 1:12-293, 2013 U.S. Dist. LEXIS 139774, at *19-20 (W.D. Pa. Aug. 14, 2013) (finding that plaintiff employee's IIED and NIED claims based on sexual assault allegations sufficiently pleaded in case, as "[i]t may be that  discovery does not bear out these allegations, but [p]laintiff should be allowed to proceed on these claims at this early stage of the proceedings.").

**8.  Plaintiff has failed to state a claim for breach of contract.**

A plaintiff may recover for breach of contract under Pennsylvania law if there is:  (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages.  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3rd Cir. 2003) (citation omitted).  As Defendants correctly state, the complaint does not attach any contract or identify any essential terms of a contract.  Rather, Plaintiff alleges that "by holding employee meetings and promoting to its employees an atmosphere free of sexual harassment and otherwise compliant with the law," Defendants induced her to work and to continue to work for Defendant Star Hotels, which "resulted

in a contract" (ECF No. 1 at ¶ 174).  The face of the complaint does not establish the existence of any such contract, nor the breach of any terms of such a contract.

Plaintiff also claims the existence of an "implied in fact contract" between Plaintiff and Defendant Star Hotels for her employment "in a meeting of the minds in exchange for wages at a lawful safe establishment," stating further that "[t]he constructive discharge by failing and inaction after Plaintiff's report of sexual harassment, no apparent harassment reporting procedure, no investigation and her confinement against her will to the Laundry Room constitutes a breach of that agreement" (ECF No. 31 at ¶73).  The argument of an "implied in fact" contract is commonly used to refute the presumption of at-will employment.  *See Scott v. Extracorporeal, Inc.,* 376 Pa. Super. 90, 545 A.2d 334, 337 (Pa. Super. 1988).  An implied in fact contract exists if "additional consideration" passes from the employee to the employer from which the Court can infer that the parties did not intend to establish an at-will employment relationship.  *Id.* at 338-39.  Even applying the implied in fact contract theory to this case, Plaintiff has not alleged that she provided any consideration besides her employment services to Defendant Star Hotels.  *See Dugan v. Bell Tel.,* 876 F. Supp. 713, 726-27 (W.D. Pa. 1994) (finding no implied contract existed as to plaintiff employee's allegations of defendant employer's promise that the company would not retaliate against its employees and policy against retaliatory discharges).  Accordingly, Defendants' motion to dismiss Count 20 is GRANTED.

Based on this ruling, the Court does not find that any of Plaintiff's remaining claims are barred by the gist of the action doctrine.

### 9. Plaintiff has sufficiently pleaded her vicarious liability claims.

Lastly, Plaintiff's claims at Count 11, 12, 15, 17, and 19 are all accompanied by an additional assertion of vicarious liability under the doctrine of *respondeat superior*.  Because

Plaintiff alleges that Defendant Shilling was acting in the course of his employment at the time of his alleged conduct, all claims of vicarious liability against Defendant Star Hotels are sufficiently pled in the complaint. *See Korinko v. Come Ready Nutrition, LLC*, No CV 2:20-226, 2020 U.S. Dist. LEXIS 151836, at *6 (W.D. Pa. Aug. 21, 2020) (finding vicarious liability claims sufficiently pleaded against defendant employer when plaintiff alleged defendant was acting in the course of his employment at the time of allegedly inappropriate and offensive incidents, but that where a direct claim against a defendant employee was dismissed, the corresponding vicarious liability claim is also dismissed).

Other than the arguments relating to preemption, which have already been addressed, Defendants do not contend that the claims for false imprisonment against Defendants Star Hotels and Shilling (Count 15), assault against Defendants Star and Shilling (Count 17), and battery against Defendants Star Hotels and Shilling (Count 19) are legally insufficient.

## IV.    Conclusion

For the reasons stated above, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) (ECF No. 28) is GRANTED IN PART and DENIED IN PART. Defendants' Motion to Dismiss under Rule 12(b)(5) is DENIED without prejudice, and Plaintiff shall make service on Defendant Andy Modi within sixty (60) days from the date of this order. The Court will GRANT Defendants' motion to dismiss as to Counts 3, 4, 5, 6, and 20 without leave to amend these claims. The Court will GRANT Defendants' motion to dismiss as to Counts 8, 9, 13, 14, 16, and 18, with leave to amend these claims to state cognizable claims. The Court will GRANT Defendants' motion to dismiss Counts 11 and 12 as to Defendants' Hemphill and Modi only, with leave to amend these claims to state cognizable claims. The Court will DENY Defendants' motion to dismiss as to Counts 7, 10, 15, 17, and 19, and Counts 11 and 12 as to Defendants Shilling and

21

Star Hotels. These claims may proceed.

An appropriate order will follow.

DATED: March 31, 2021

Stephanie L. Haines
United States District Judge